# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:   Salvatore Cipriano,                                     Case No. 14-48527-mbm

        Debtor.                                     Chapter 7

                                                   Honorable Marci B. McIvor

_____

R.A.M. PRODUCE DISTRIBUTORS, L.L.C.,
a Michigan limited liability company,

        Plaintiff,

-vs-                                                             Adversary Proc. No. 14-04957-mbm

SALVATORE CIPRIANO a/k/a SAL CIPRIANO
an individual, AND PRODUCE BUYERS CO., a
Michigan corporation,

        Defendants.

| | | |
|---|---|---|
| Erik C. Stein (P72172) | Kenneth Nathan (P39142) | Victor J. Torres (P43240) |
| Linnell & Associates, PLLC | Nathan Law PLC | Williams Acosta, PLLC |
| Attorneys for Debtor | Trustee | Attorneys for R.A.M. Produce |
| 2804 Orchard Lake Road | 29100 Northwestern Highway | Distributors, L.L.C. |
| Suite 203 | Suite 310 | 535 Griswold Street, Suite 1000 |
| Keego Harbor, MI  48320 | Southfield, MI 48034 | Detroit, MI 48226-3692 |
| (248) 977-4182 | (248) 351-0099 | (313) 963-3873 |

## BRIEF IN SUPPORT OF PLAINTIFF R.A.M. PRODUCE DISTRIBUTORS, L.L.C.'S RESPONSE TO DEFENDANT CIPRIANO'S MOTION TO DISMISS CLAIMS UNDER F.R.C.P. 12(b)(6)

# TABLE OF CONTENTS

INDEX OF AUTHORITIES .......................................................................................... iv, v

ISSUES PRESENTED ..................................................................................................... vi

CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF
SOUGHT ....................................................................................................................... vii

STATEMENT OF FACTS ............................................................................................... 1

ARGUMENT .................................................................................................................. 5

A.    RAM Produce Asserted a Viable PACA Claim Against Defendant Cipriano ....... 5

    1.    RAM Produce preserved PACA trust benefits by providing written notice
        on all of its invoices that the perishable agricultural commodities were sold
        subject to the PACA statutory trust ............................................................... 5

    2.    Defendant Cipriano held perishable agricultural commodities in statutory
        trust under the PACA for the benefit of RAM Produce ................................... 6

    3.    Defendant Cipriano is personally liable to RAM Produce for failing to
        preserve the PACA Trust ............................................................................... 7

B.    For Three Independent Reasons Defendant Cipriano's "Course of Dealing" and
    Related "Lack of Standing" Arguments Fail Based on Established Facts and
    Application of Applicable Law ............................................................................ 9

    1.    RAM Produce used the default 10 day payment terms set forth in the
        PACA, 7 C.F.R. § 46.2(aa)(5) ....................................................................... 10

    2.    Reviewing courts have consistently rejected the argument that acceptance
        of partial payments or payments beyond 30 days when due results in
        forfeiture of a PACA claim ............................................................................ 10

    3.    Effective April 13, 2011, 7 C.F.R. § 46.46(e)(3) was amended (and now
        provides by regulation a conclusion consistent with prior case law) expressly
        to provide that a PACA claimant does not forfeit the PACA trust by accepting
        partial payments and this amendment applies in this proceeding as partial
        payments were made to RAM Produce in May and June of 2012 ................. 12

C.    The PACA Trust Meets The Trust Requirements Of 11 U.S.C. §523(a)(4) and
    Therefore, PACA Liability is Non-Dischargeable. ............................................ 14

STANDARD OF REVIEW AND RELIEF REQUESTED ............................................ 17

14-04957-mbm    Doc 15    Filed 10/23/14    Entered 10/23/14 15:03:55    Page 3 of 25

# INDEX OF AUTHORITIES

Cases

*Baugh v. Matheson (In re Matheson)*,
    10 B.R. 652 (Bankr. S.D. Ala. 1981)................................................................ 16
*Bennett v. James*,
    737 F Supp. 2d 219 (S.D. New York 2010)....................................................... 18
*Blair Meriam Fresh Fruit & Produce Co. v. Clark*,
    95 B.R. 774 (Bankr. D. Colo. 1989).................................................................. 16
*Capital Indem Corp v. Interstate Agency (In re Interstate Agency)*,
    760 F.2d 121 (6th Cir. 1985)............................................................................. 15
*Carlisle Cashway v. Johnson (In re Johnson)*,
    691 F.2d 249 (6th Cir. 1982)............................................................................. 15
*Collins Bros. Corp. v. Nix (In re Nix)*,
    1992 WL 119143 (M.D. Ga. April 10, 1992) .................................................... 15
*Consumers Produce Co v. Masdea (In re Masdea)*,
    307 B.R. 466 (Bankr. W.D. Penn. 2004) .......................................................... 14
*Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc.*,
    217 F.3d 348 (5th Cir. 1977)......................................................................... vii, 8
*Grand Opera Co. v. Twentieth Century Fox Film Corp.*,
    235 F.2d 303 (7th Cir. 1956)............................................................................. 17
*Gullo Produce Co., Inc. v. A.C. Jordan Produce Co, Inc.*,
    175 F. Supp. 64 (W.D. Penn. 1990) ................................................................. 16
*Hiller Cranberry Products, Inc. v. Koplovsky*,
    106 F. Supp. 2d 146 (D. Mass. 2000)............................................................. 8, 9
*Ibarra v. United States*,
    120 F.3d 472 (4th Cir. 1997)............................................................................. 17
*In Re Fresh Approach, Inc.*,
    51 B.R. 412 (N.D. Texas 1985)......................................................................... 16
*In Re Gotham Provision Co.*,
    669 F.2d 1000 (5th Cir. 1980)........................................................................... 11
*In Re Lombardo Fruit and Produce Company*,
    12 F.3d 806 (8th Cir. 1993)...........................................................vii, 11, 12, 13
*In Re Prange Foods Corp*,
    63 B.R. 211 (Bankr. W.D. Mich. 1986) ........................................................... 14
*In Re Masdea*,
    307 B.R. 466 (Bankr. W.D. Penn. 2004) ....................................................... 8, 14
*In Re Ozcelik*,
    267 B.R. 485 (2001) .......................................................................................... 8
*In Re W. L. Bradley Co.*,
    75 B.R. 505 (Bankr. E.D. Penn. 1987) ............................................................. 16
*Labram v. Havel*,
    43 F.3d 918 (4th Cir. 1995)............................................................................... 17
*LaGrasso Brothers, Inc. v. American Foodservice, LLC*,
    2011 WL 891221 (E.D. Mich.) ........................................................................ 12

*Levenstein v. Salafsky*,
    164 F.3d 345 (7th Cir. 1998)...............................................................17
*National Bonding & Accident Ins. Co. v. Petersen (In re Petersen)*,
    51 B.R. 486 (Bankr. D. Kan. 1985).....................................................16
*Nuchief Sales, Inc. v. Harper*,
    150 B.R. 416 (Bankr. E.D. Tenn. 1993) .......................................vii, 15
*Overton Distributors, Inc. v. Heritage Bank*,
    340 F.3d 361 (6th Cir. 2003)...............................................................10
*Prudential Bache Securities Inc. v. Sawyer (In re Sawyer)*,
    112 B.R. 386 (D. Colo. 1990) ..............................................................15
*Schilling v. Swick*,
    868 F. Supp. 904 (W.D. Mich. 1994) ..................................................17
*Six L's Packing Company, Inc. v. Beale*,
    524 Fed. Appx. 148 (6th Cir. 2013) .....................................................12
*Spell*,
    650 F.2d 375 (2nd Cir. 1981)...............................................................13
*Stowe Potato Sales Inc. v. Terry's Inc.*,
    24 B.R. 329 (W.D. Va. 1998) .........................................................vii, 6
*Subich v. Verrone (In re Verrone)*,
    277 B.R. 66 (Bankr. W.D. Penn. 2002) ...............................................14
*Tom Lange Company v. Stout*,
    123 B.R. 412 (W.D. Okla. 1990)...............................................vii, 15, 16
*Travelers Express Co. v. Niven (In re Niven)*,
    32 B.R. 354 (Bankr. W.D. Okla. 1983) ...............................................16


Rules, Statutes, and Regulations


F.R.C.P. 12(b)(6) ..........................................................................5, 17, 18
F.R.C.P. 12(d)...........................................................................................17
M.C.L. 440.1101 .....................................................................................10
7 U.S.C. § 499a.............................................................................1, 4, 10
7 U.S.C. § 499e(c) .................................................................................4, 6, 14
7 U.S.C. §499e(c)(2) ....................................................................4, 7, 8, 16
7 U.S.C. §499e(c)(3) ................................................................................6
7 U.S.C. §499e(c)(4) ............................................................................6, 7
7 C.F.R. § 46.2(aa)(5) .............................................................................10
7 C.F.R. § 46.46(a)(3) .............................................................................13
7 C.F.R. § 46.46(e)(2) ..........................................................................9, 10
7 C.F.R. § 46.46(e)(3) .............................................................................13
7 C.F.R. § 46.46(f) ...............................................................................6, 7
7 C.F.R. § 46.46(f)(3) ..............................................................................6
11 U.S.C. §523(a)(4) ......................................... vi, vii, 5. 8, 14, 15, 16, 17, 18

## ISSUES PRESENTED

I.      Did RAM Produce assert a viable PACA claim against Defendant Cipriano?

        RAM Produce Answers:          Yes
        Defendant Cipriano Answers:     No

II.     Based on the express terms on all RAM Produce invoices and given applicable case law, did RAM Produce assert a viable PACA claim against Defendant Cipriano despite Defendant Cipriano's argument that a PACA claim was not preserved because of a "course of dealing" under which RAM Produce accepted partial payments and late payments from Defendants?

        RAM Produce Answers:          Yes
        Defendant Cipriano Answers:     No

III.    Did RAM Produce assert a viable claim for breach of trust under 11 U.S.C. 523(a)(4) so that the underlying debt owed to RAM Produce and any related judgment can be properly declared non-dischargeable?

        RAM Produce Answers:          Yes
        Defendant Cipriano Answers:     No

## CONTROLLING OR MOST APPROPRIATE
## AUTHORITY FOR THE RELIEF SOUGHT

I.      Personal liability of Defendant Cipriano attaches for violation of the PACA based on Defendant Cipriano's admissions.  *Stowe Potato Sales, Inc. v. Terry's, Inc.*, 224 B.R. 329 (W.D. Va. 1998).  *Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc.* 217 F.3d 348 (5th Cir. 1977).

II.     Based on the express terms of the RAM Produce invoices, the PACA, and applicable case law, RAM Produce did not forfeit entitlement to the PACA trust through a "course of dealing" by accepting late payments or payments beyond the 30 day maximum provided under the PACA.  *In Re Lombardo Fruit and Produce Company*, 12 F.3d 806 (8th Cir. 1993).

III.    RAM Produce asserted a viable claim against Defendant Cipriano for non-dischargeability of the underlying debt and any related judgment in favor of RAM Produce because Defendant Cipriano controlled assets of a PACA trust but failed to preserve them thereby violating 11 U.S.C. 523(a)(4).  *Nuchief Sales, Inc. v. Harper,* 150 B.R. 416 (Bankr. E.D. Tenn. 1993).  *Tom Lange Co. v. Stout,* 123 B.R. 412 (B.R. E.D. Okla. 1990).

## STATEMENT OF FACTS

Plaintiff R.A.M. Produce Distributors, L.L.C. ("RAM Produce") is and was at all times relevant to this proceeding a supplier/dealer of perishable agricultural commodities, and a licensee under the Perishable Agricultural Commodities Act, 7 U.S.C. § 499a, *et seq.* ("PACA"). Defendant Salvatore Cipriano ("Defendant Cipriano") was the sole owner and operator of Defendant Produce Buyers Co. ("Defendant Produce Buyers") during the times that the relevant sales of produce and partial payments occurred (from June 2010 through June 2012).  (Exhibit A: § 341 Tr. pp. 10-12; Exhibit B:  Schedule B – Personal Property p. 2).  Defendant Produce Buyers was licensed under the PACA at all times relevant to this proceeding.  (Exhibit A:  § 341 Tr. p. 11).  Defendant Cipriano controlled all financial decisions of Defendant Produce Buyers. (Exhibit A:  § 341 Tr. pp. 10-11, 15-16).

The disposition of proceeds obtained by Defendants through sale of perishable agricultural commodities sold by RAM Produce to Defendant Produce Buyers was also controlled by Defendant Cipriano.  (Exhibit A:  § 341 Tr. p. 10, 15-16).  At the § 341 hearing, Defendant Cipriano testified, in part, as follows with regard to financial control and decision-making for Defendant Produce Buyers:

> Q.    You were in charge of Produce Buyers?
>
> A.    Right.
>
> Q.    You decided how the money would be spent once it was received; correct?
>
> A.    Yes.
>
> Q.    There was no one else that was in charge --
>
> A.    No.
>
> Q.    -- for Produce Buyers; correct?

1

A.      No.
(Exhibit A:  § 341 Tr. pp. 10-11).

From on or about June 10, 2010, through on or about November 12, 2010, RAM Produce sold perishable agricultural commodities to Defendant Produce Buyers, in the total principal amount of $37,921.10.  (Exhibit C:  Bommarito Affidavit ¶¶3, 11; and Exhibit C-1:  RAM Produce Customer Ledger).  Defendant Produce Buyers failed to pay RAM Produce, in full, for the produce sold.  (Exhibit C:  Bommarito Affidavit ¶¶16-20).  Defendant Produce Buyers made a partial payment to RAM Produce on or about May 18, 2012, in the amount of $3,100.00 and made a second partial payment on or about June 20, 2012, in the amount of $875.00; therefore, the principal balance due and owing to RAM Produce is $33,946.10.  (Exhibit C:  Bommarito Affidavit ¶¶11-14).

At the § 341 hearing, Defendant Cipriano admitted that a principal balance of $33,946.00 is owed to RAM Produce, acknowledged that the debt was reaffirmed at the time of the two partial payments in May and June of 2012, and admitted that the principal amount of that debt was due as of the date of the partial payments and the date of the hearing:

Q.      First, I see that you've listed on our Schedule F a debt to Ram Produce -- that's my client --

A.      Yes.

Q.      -- in the amount $33,946.

A.      Yes.

Q.      And that is the amount that is presently due and owing; correct?

A.      Approximate.  To the best of my memory.

Q.      Yeah.

MR. TORRES:  Counsel, I'm going to show him a one-page -- it's just a summary of a customer ledger sheet with the balance.

MR. STEIN: Okay.

BY MR. TORRES:

Q.     And I'd just like to direct your attention to this customer ledger from Ram Produce Distributors, and at the bottom we see that the most recent payment was from June 20 of 2012, in the amount of $875; correct? Do you see that? Second to the bottom. I'm -- yeah, second to the bottom --

A.     Okay. Uh-huh.

Q.     -- line.

A.     Yes.

Q.     Okay. So that shows a balance of $33,946.10; correct?

A.     Yes.

Q.     And that matches within ten cents of what you have listed on Schedule F, correct?

A.     Yes.

Q.     Okay. And we see if we look at the ledger, the one-page ledger I gave to you, that on May 18, 2012, there is also a payment made, a partial payment on the balance of $3,100; correct? Third -- third from the bottom.

A.     Yes.

Q.     Okay. So at the time those two payments were made on May 18 of '12, and June 20 of 2012, you in fact acknowledge that that's the amount that was due and owing; correct?

A.     Yes.

Q.     Okay. And you acknowledge that today; correct?

A.     Yes.

(Exhibit A: § 341 Tr. pp. 8-9)

All of the RAM Produce invoices for the sales to Defendant Produce Buyers expressly

provide the following PACA notice statements:

3

The Perishable Agricultural Commodities listed on this invoice are sold subject to the statutory trust authorized by Section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. § 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received.

Payment is due within 10 days after the day on which the produce is accepted, or as otherwise specifically provided under the Perishable Agricultural Commodities Act, 7 U.S.C. 499a *et seq.*

The purchaser of the commodities listed on this invoice and those liable for payment under the PACA are also liable for pre-judgment interest of 7% from the day after the invoice is due and for attorney fees and costs in connection with collecting payment under this invoice.
(Exhibit D: RAM Produce Invoices).

As noted on each RAM Produce invoice, payment terms were 10 days from the date of acceptance of the produce sold. RAM Produce never agreed with Defendant Produce Buyers and/or Defendant Cipriano to payment terms other than the PACA 10 day term provided on each RAM Produce invoice. RAM Produce also never entered into an agreement with Defendant Produce Buyers or Defendant Cipriano to extend payment for the RAM Produce invoices beyond 30 days. Finally, at no time did RAM Produce representatives ever discuss with any representative from Defendant Produce Buyers payment terms other than the 10 day PACA payment term provided on each RAM Produce invoice. (Exhibit C: Bommarito Affidavit ¶¶6-10).

On May 16, 2014, Defendant Cipriano filed a voluntary petition under Chapter 13 of the Bankruptcy Code. On June 13, 2014, Defendant Cipriano filed a notice of voluntary conversion from Chapter 13 to Chapter 7. The Chapter 7 proceeding is pending before this Court.

On September 15, 2014, RAM Produce filed the Complaint that initiated this adversary proceeding to secure a money judgment against Defendants and a judgment providing that the

underlying debt and related judgment are non-dischargeable under 11 U.S.C. § 523(a)(4). In the Answer to RAM Produce's Complaint Defendant Cipriano admits each of the following allegations:

> 18. Upon arrival of the perishable agricultural commodities to Defendant Produce Buyers' place of business, Defendant Produce Buyers and Defendant Cipriano accepted the commodities per the RAM Produce invoices.
>
> 19. Defendant Produce Buyers sold to non-parties the perishable agricultural commodities provided by RAM Produce, and Defendants received and controlled sale proceeds, but have failed to pay RAM Produce the principal amount due and owing of $33,946.10.
>
> 20. The perishable agricultural commodities sold by RAM Produce to Defendant Produce Buyers and Defendant Cipriano were subject to the statutory trust created by the PACA. 7 U.S.C. §499e(c)(2).
>
> (Exhibit E: Answer pp. 2-3).

## ARGUMENT

In Section A below, RAM Produce will establish that it has pled a viable PACA claim against Defendant Cipriano that is not subject to dismissal under F.R.C.P. 12(b)(6). In Section B below, RAM Produce will show that the "course of dealing" and "lack of standing" arguments interposed by Defendant Cipriano fail for three separate reasons given undisputed facts and applicable law. Finally, in Section C below RAM Produce will establish that the underlying debt and the judgment to be entered based on that debt are non-dischargeable under 11 U.S.C. § 523(a)(4) because Defendant Cipriano violated the PACA statutory trust given the admissions of record by Defendant Cipriano and applicable law.

**A.    RAM Produce Asserted a Viable PACA Claim Against Defendant Cipriano**

    **1.    RAM Produce Preserved PACA Trust Benefits by Providing Written Notice that the Produce was Subject to the Statutory Trust on all of its Invoices**

5

The PACA requires that a produce seller must provide written notice to preserve PACA trust benefits:

>    (3) the unpaid supplier, seller, or agent shall lose the benefits of such trust unless such person has given written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker within thirty calendar days
>
>    (i)    After expiration of the time prescribed by which payment must be made pursuant to regulation, issued by the Secretary
>
>    (ii)    After expiration of such other time by which payment must be made, as the parties have expressly agreed to in writing before entering into the transaction; or
>
>    (iii)    After the time the supplier, seller, or agent has received notice that the payment instrument promptly presented for payment has been dishonored. . . .
>
>    7 U.S.C § 499e(c)(3). (Underscore added). See also 7 C.F.R. § 46.46(f).

The PACA also specifies that the notice to preserve the PACA trust may be affixed to the normal billing or invoice statements of a seller:

>    (4)    In addition to the method of preserving the benefits of the trust specified in paragraph (3), a licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust. The bill or invoice statement must include the information required by the last sentence of paragraph (3) and contain on the face of the statement the following: "The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5(c) of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e(c)). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received."
>
>    7 U.S.C. § 499e(c)(4). (Underscore added). See also 7 C.F.R. § 46.46(f)(3).

If the PACA notice is properly included on an agricultural commodities seller's invoices pursuant to 7 U.S.C. § 499e(c)(4) and 7 C.F.R. § 46.46(f), and the payment terms comply with the PACA, a PACA claimant has preserved its PACA trust claim. *Stowe Potato Sales, Inc. v.*

*Terry's, Inc.*, 224 B.R. 329, 332-333 (W.D. Va. 1998). In the proceeding pending before this Court, it is uncontested that each of the RAM Produce invoices through which produce was sold contain the express language for notice of the PACA sale and preservation of trust provided in 7 U.S.C. § 499e(c)(4) and 7 C.F.R. § 46.46(f). (See Exhibit D: RAM Produce Invoices). RAM Produce, therefore, provided the express notice required to preserve the PACA trust claims on its invoices.

### 2. Defendant Cipriano Held RAM Produce Commodities and Proceeds from Sale of a Commodities in the PACA Statutory Trust

The PACA provides that perishable agricultural commodities and proceeds of sale of those commodities are held in trust for the benefit of unpaid suppliers until full payment has been received:

> [p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents. . . .
> 7 U.S.C. § 499e(c)(2). (Underscore added).

RAM Produce sold produce to Defendant Produce Buyers, for which the total principal amount of $33,946.10 is owed. (Exhibit C1: RAM Produce Customer Ledger). Defendant Cipriano acknowledged receipt and acceptance of the produce from RAM Produce. (Exhibit E: Answer p. 2 ¶18 where Defendant Cipriano "admits" ¶18 of the Complaint which provides that "[u]pon arrival of the perishable agricultural commodities to Defendant Produce Buyers' place of business, Defendant Produce Buyers and Defendant Cipriano accepted the commodities per the RAM Produce invoices."). Accordingly, the produce, receivables, and proceeds were held in

7

statutory trust by Defendant Cipriano. *Hiller Cranberry Products, Inc v. Kopolovsky*, 106 F. Supp. 2d 146, 149 (D. Mass. 2000). A PACA debtor has the burden to track and account for all PACA trust assets. *In Re Ozcelik*, 267 B.R. 485, 489 (Bankr. D. Mass. 2001).

### 3. Defendant Cipriano is Personally Liable to RAM Produce for Failing to Preserve the PACA Trust

Personal liability is imposed on any PACA trustee failing to hold trust assets for the benefit of the supplier. In *In Re Masdea*, 307 B.R. 466, 473-476 (Bankr. W.D. Penn. 2004), the court, in part, wrote with regard to the intention and operation of PACA:

> A trust arising under § 499e(c)(2) is of the type required for § 523(a)(4) of the Bankruptcy Code to be operative. . . <u>An individual who is in a position to control assets of a PACA trust but does not preserve them for the benefit of unpaid suppliers or seller has breached a fiduciary duty. Liability is imposed on the trustee who uses trust assets for any purpose other than paying suppliers or sellers.</u> . . .
> *In Re Masdea*, 307 B.R. at 473-474. (Citations omitted).

Stemming from the fiduciary duty owed under the PACA, an individual who breaches this duty is personally liable for payment to the seller of the perishable agricultural commodities. See for e.g., *Golman-Hayden Co., Inc. v. Fresh Source Produce, Inc.*, 217 F.3d 348, 351 (5th Cir. 1977).

In this case, Defendant Cipriano is personally liable for the failure to pay the PACA trust proceeds to RAM Produce and the ensuing breach of the PACA trust. At the § 341 hearing, Defendant Cipriano admitted that he controlled all financial decisions of Defendant Produce Buyers, including how all proceeds obtained from sale of the commodities furnished by RAM Produce to Defendant Produce Buyers were spent. (Exhibit A: § 341 Tr. pp. 10-11). Furthermore, Defendant Cipriano admitted under oath at the § 341 hearing that per his decision, proceeds received by Defendant Cipriano from the sale of produce provided by RAM Produce

8

were funneled through Defendant Produce Buyers to pay Defendant Produce Buyers' expenses. (Exhibit A: § 341 Tr. pp. 10, 15-16).

As a result of the foregoing, personal liability of Defendant Cipriano for the PACA trust violation attaches in this case as he was in a position to control assets of a PACA trust. See also for e.g., *Hiller Cranberry Products, Inc. v. Koplovsky*, 106 F. Supp. 2d 146, 149 (D. Mass. 2000) (An individual who is in the position to control PACA trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for the tortious act).

**B.      For Three Separate Reasons, Defendant Cipriano's Arguments -- That RAM Produce Forfeited PACA Trust Rights Due to a "Course of Dealing" and Related "Lack of Standing" through RAM Produce's Acceptance of Partial Payments or Payments More Than 30 Days Past Due -- Fail**

In the Motion to Dismiss, Defendant Cipriano argues that acceptance of partial payments by RAM Produce in May and June 2012, which is beyond the maximum time for payment provided under the PACA (see for e.g. 7 C.F.R. 46.46(e)(2)), forfeits PACA trust rights.[1]  As

---

[1] Through an e-mail sent by Defendant Cipriano's counsel on October 1, 2014, Defendant Cipriano requested concurrence on dismissal of the pending claims of RAM Produce based on lapse of the applicable statute of limitations. (Exhibit F: 10-1-14 E-mail). Through an e-mail sent by counsel for RAM Produce on October 2, 2014 (Exhibit G: 10-2-14 E-mail), RAM Produce responded to the request for concurrence by stating that the applicable limitations periods had not lapsed since, even assuming a three year limitations period applies (which is an open question), the limitations period was reaffirmed for limitations analysis purposes by the partial payments made on 5-18-12 and 6-20-12 with citation to applicable authority (*Charbonneau v Mary Jane Elliott, P.C.*, 611 F Supp 2d 736, 741-742 (ED MI 2009). Counsel for RAM Produce also provided Defendant Cipriano a copy of the § 341 hearing transcript where Defendant Cipriano reaffirmed the underlying debt to RAM Produce based on the 2012 partial payments (see Exhibit A: § 341 Tr. p. 9). (See also Exhibit G: 10-2-14 E-mail). In the pending Motion to Dismiss, Defendant Cipriano listed in the Analysis section (i) of the Table of Contents, an argument that RAM Produce's breach of fiduciary duty claim is time-barred by the statute of limitations and, therefore, that RAM Produce's discharge action (under §523(a)(4)) is correspondingly time-barred by the statute of limitations. (See p. 3 of Defendant Cipriano's Motion to Dismiss). However, substantive review of the arguments made in Defendant Cipriano's Motion to Dismiss indicate that the statute of limitations argument was abandoned presumably based on the authority provided by counsel for RAM Produce. (See for e.g. Motion to Dismiss pp. 7-12). Instead, in the argument section of the Motion to Dismiss, Defendant Cipriano urges that the pending RAM Produce claims should be dismissed based on a "course of dealing" and related "standing" arguments arising from acceptance of partial payments and payments beyond the 30 day deadline provided under the PACA. To the extent that Defendant Cipriano argues in the pending Motion to Dismiss, that the applicable limitations periods have lapsed on the pending claims, RAM Produce objects as there are no such arguments properly developed in the body of the Motion to Dismiss and any efforts to rely on the statute of limitations argument through the pending Motion to Dismiss are

9

developed in the three sub-sections below, cursory review of applicable law and consideration of facts of record establish that the arguments relied on by Defendant Cipriano lack merit and are frivolous.

1.  **RAM Produce Preserved PACA Trust Benefits by Providing Written Notice on all of its Invoices that the Produce Sold was Subject to the PACA Statutory Trust**

On page 9 of the Motion to Dismiss, Defendant Cipriano argues that under principles of the Uniform Commercial Code, M.C.L. 440.1101 *et seq.* ("UCC"), "and absent any express terms provided by" RAM Produce, an agreement to extend payment beyond the 30 day maximum provided by the PACA, 7 C.F.R. 46.46(e)(2), may be implied based on "course of conduct". This argument is frivolous since RAM Produce provided "express terms" on the face of each invoice at issue which provides for 10 day payment terms:

> Payment is due within 10 days after the day on which the produce is accepted, or as otherwise specifically provided under the Perishable Agricultural Commodities Act, 7 U.S.C. 499a *et seq.*
> (Exhibit D: RAM Produce Invoices).

Where a seller and buyer use the 10 day default payment terms provided in the PACA regulations (see for e.g. 7 C.F.R. 46.2(aa)(5)), this notice of intent to preserve benefits is all that is necessary to preserve the PACA trust. *Overton Distributors, Inc. v. Heritage Bank*, 340 F3d, 361, 365 (6th Cir. 2003). RAM Produce respectfully submits that there is no reasonable basis for Defendant Cipriano to represent to this Court that "express terms" were absent and not provided by RAM Produce given the plain 10 day PACA default provision provided on the face

---

being made surreptitiously and without proper notice or citation to relevant facts or authority to support the arguments. In the unlikely event that Defendant Cipriano is attempting to assert lapse of the applicable statute of limitations in the pending Motion to Dismiss, RAM Produce requests an opportunity to respond more substantively to such argument through a supplemental brief which will include the authority noted in the 10-2-14 e-mail from counsel for RAM Produce (Exhibit G).

of each relevant invoice. Defendant Cipriano's argument based on "course of dealing" fails based on express compliance with PACA payment terms by RAM Produce.

>    **2.    Courts have Routinely and Repeatedly Rejected the Argument that Acceptance of Partial Payment or Payments Beyond 30 Days Results in Forfeiture of PACA Trust Benefits Based on a "Course of Dealing" or Otherwise**

In this proceeding it is undisputed that RAM Produce received and accepted partial payments on the balance due from Defendant Produce Buyers in May and June of 2012. (Exhibit C: Bommarito Affidavit ¶¶11-14; Exhibit A: § 341 Tr. pp. 8-9). Cursory review of applicable case law establishes that a plethora of courts have considered and rejected the "course of dealing" argument relied on by Defendant Cipriano. In *In Re Lombardo Fruit and Produce Company*, 12 F.3d 806 (8th Cir. 1994), the Court upheld a district court's holding that the party's course of dealing is not relevant when considering whether a produce seller is entitled to PACA trust protections, writing, in part, as follows:

>    First, the parties had an agreement that met PACA's requirements. This agreement is a perfectly valid agreement, fully enforceable under contract law. The fact that, in the past, Lange has not demanded payment on time does not invalidate the contract.
>
>    \*    \*    \*
>
>    Secondly, we agree with the district court that a course of dealing analysis conflicts with this court's prior holding in *Hull Co*. In that case, we held that only written extensions, and not oral extensions, could validly extend the payment terms beyond those specified in the parties' written agreement. 924 F.2d at 781-82. If an express, oral agreement cannot be deemed to extend payment terms, we fail to see how something less than an express oral agreement-namely, the parties' course of dealing-can.
>
>    Thirdly, we note that PACA's trust provision is modeled on the one appearing in the Packers and Stockyards Act ("PSA"), 7 U.S.C. §§ 196-97 (1988).
>
>    \*    \*    \*
>
>    Consequently, given that the parties' course of dealing is not relevant to PSA's trust analysis, *In Re Gotham Provision Co.*, 669 F.2d 1000,

> 1007 (5th Cir. Unit B), *cert. denied,* 459 U.S. 858, 103 S.Ct. 129, 74
> L.Ed.2d 111 (1982), the parties' course of dealing should not be
> relevant to PACA's trust analysis.
> (*In Re Lombardo Fruit*, 12 F.3d at 810-811).

For each of the three reasons noted by the Court in *In Re Lombardo*, 12 F.3d 810-811, Defendant Cipriano's "course of dealing" argument fails.  In addition, Defendant Cipriano's attempt to rely on UCC provisions and/or law regarding "course of dealing" is misplaced.  The UCC applies in PACA cases only where the PACA is silent as to a material part of the transaction at issue.  *Six L's Packing Company, Inc. v. Beale*, 524 Fed. Appx. 148, 154 fn. 5 (6th Cir. 2013).  As noted by the Court in *In Re Lombardo*, 12 F.3d at 811, a "course of dealing" analysis is not relevant to PACA trust analysis (by analogy to the Packers and Stockyards Act) since the PACA statutory scheme specifically provides the method by which a PACA claimant is to preserve a PACA trust as noted in the PACA statutory and regulatory provisions cited above. In addition, the UCC does not control in the proceeding pending before this Court because the RAM Produce invoices (Exhibit D) provide explicit payment terms of 10 days after acceptance as provided by the PACA.  There was never any agreement (or even discussions) between authorized representatives of the parties concerning payment terms other than the 10 day term provided on the RAM Produce invoices.  (Exhibit C:  Bommarito Affidavit ¶¶5-10).

Review of relevant case law demonstrates routine rejection of a "course of dealing" argument in the context of a PACA trust claim, particularly where PACA rights are preserved by express provisions on an invoice -- the situation existing in the case at bar.  In fact, reasonable review and consideration of the unpublished case cited by Defendant Cipriano, *LaGrasso Brothers, Inc. v. American Foodservice, LLC*, 2011 WL 891221 (E.D. Mich.) reveals that the "course of dealing" argument is not reasonably well-grounded based on the admitted facts in this case and/or law.  (See Exhibit H:  copy of *LaGrasso Brothers, supra*, p. 5).  Defendant

12

Cipriano's "course of dealing" and related "standing" arguments fail and the Motion to Dismiss should be denied.

**3.     An Amendment to An Applicable PACA Regulation (7 C.F.R. § 46.46(e)(3)) Effective April 13, 2011 Now Codifies Prior Case Law to Provide Explicitly that a PACA Claimant Does Not Forfeit the PACA Trust by Accepting a Partial Payment and this Amendment Applies in this Proceeding as Partial Payments were made to RAM Produce in May and June 2012**

Case law addressing the issue has consistently provided that a PACA claim defendant may not viably rely on a "course of dealing" argument to sustain the position that acceptance of partial or late payments vitiates PACA trust rights.   See for e.g. *In Re Lombardo, supra*. However, effective April 13, 2011, an applicable provision of the PACA regulation, 7 C.F.R. 46.46(e)(3), was amended to state explicitly that acceptance of partial payments does not vitiate established PACA trust rights:

> (3)  If there is a default in payment as defined in § 46.46(a)(3), the seller, supplier, or agent who has met the eligibility requirements of paragraphs (e)(1) and (2) of this section will not forfeit eligibility under the trust by agreeing in any manner to a schedule for payment of the past due amount or by accepting a partial payment.

The noted amendment to 7 C.F.R. § 46.46(e)(3) firmly establishes that Defendant Cipriano's "course of dealing" and related "standing" arguments are non-meritorious.  First, the partial payments at issue occurred in May and June of 2012, while the C.F.R. amendment was effective April 13, 2011.  Therefore, the Court should give effect to the April 2011, amendment based on conduct that occurred in May and June of 2012.

Second, the general principle of law that a court must apply the law that exists as of the date it renders its decision has consistently been applied in cases arising under the Bankruptcy Code.  See for e.g. *In Re Spell*, 650 F.2d 375, 377 (2nd Cir. 1981).  Clearly, the law in effect as of the date that the Court will render a decision on the pending Motion to Dismiss is that

acceptance of a partial payment by a PACA claimant, where the PACA trust eligibility requirements have been met, does not forfeit PACA rights.

Third, in addition to the two reasons noted in the two preceding paragraphs, enforcing the C.F.R. amendment that was effective in April 2011, would not be a "retroactive" application of the amendment inasmuch as the regulation amendment did not "change the law" as even prior to the amendment, courts rejected the "course of dealing" argument proffered by Defendant Cipriano. See *Patel v. Gonzales*, 432 F.3d 685, 680 (6th Cir. 2005) (A statute has retroactive effect if the statute attaches new legal consequences to events completed before its enactment). Defendant Cipriano's Motion to Dismiss should be denied.

## C.   The PACA Trust Meets the Trust Requirements Of 11 U.S.C. § 523(a)(4)and is Non-Dischargeable.

The debt owed to RAM Produce is a non-dischargeable debt of Defendant Cipriano pursuant to § 523(a)(4), which provides that a Chapter 7 discharge does not discharge debts that are the result of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). To prevail under § 523(a)(4), it must be shown that: (1) debtor was acting in a fiduciary capacity; and (2) debtor committed a defalcation while acting in such capacity. *Consumers Produce Co v. Masdea (In re Masdea)*, 307 B.R. 466, 472 (Bankr. W.D. Penn. 2004) (citing *Subich v. Verrone (In re Verrone)*, 277 B.R. 66, 71 (Bankr. W.D. Penn. 2002).

Under the PACA a seller of produce is protected as a produce buyer's unpaid obligation becomes a trust obligation prior to and superior to any lien or security interest in inventory held by the produce buyer's secured lender. *In Re Prange Foods Corp*, 63 B.R. 211, 214 (W.D. Bankr. Mich. 1986) and 7 U.S.C. 499e(c). In analyzing specifically whether the PACA trust

14

meets the 11 U.S.C. § 523(a)(4) requirement, the Court in *Nuchief Sales Inc. v. Harper*, 150 B.R.

416, 418-419 (Bankr. E.D. Tenn. 1993), wrote, in part, as follows:

> The term "fiduciary capacity," contained in *§ 523(a)(4)* applies only to express or technical trusts and does not extend to implied trusts, which are imposed on transactions by operation of law as a matter of equity. See *Capital Indem Corp v Interstate Agency (In re Interstate Agency)*, 760 F.2d 121, 124 (6th Cir. 1985) (construing § 17(a)(4), predecessor to *§.523(a)(4); Carlisle Cashway v. Johnson (In re Johnson)*, 691 F.2d 249, 251 (6th Cir. 1982) (construing § 17(a)(4)). <u>The statutory trust created pursuant to the provisions of PACA satisfies the express or technical trust requirements of *§ 523(a)(4)*.</u> *Cf. Capital Indem Corp v. Interstate Agency (In re Interstate Agency)*, 760 F.2d at 124 (section 1207(1) of the Michigan Insurance Code establishes an insurance agency relationship as an express trust fiduciary relationship); *Carlisle Cashway v. Johnson (In re Johnson)*, 691 F.2d at 252 (holding that the Michigan Building Contract Fund Act satisfied the express of technical trust requirements of § 17(a)(4)). Other courts that have considered this precise issue have also concluded that PACA trusts give rise to the fiduciary capacity required under § 523(a)(4). See *Collins Bros. Corp. v. Nix (In re Nix)*, 1992 WL 119143 (MD Ga. April 10, 1992); *Tom Lange Co v. Stout (In re Stout)*, 123 B.R. 412.
> (Underscore added).

The conclusion of the Court in *Nuchief Sales, supra*, is consistent with the decisions of

several other courts that the statutory trust created under the PACA meets the express trust

requirements of 11 USC 523(a)(4). The court in *Tom Lange Co v. Stout*, 123 B.R. 412 (Bankr.

W.D. Okla. 1990) undertook a detailed review of the legislative history of the PACA in the

context of whether a PACA trust satisfies the fiduciary capacity and trust requirements of §

523(a)(4) and concluded that PACA does satisfy the requirements. The Court wrote, in part, as

follows:

> Federal law determines the fiduciary status for purposes of §523(a)(4), *Prudential Bache Securities Inc. v. Sawyer (In re Sawyer)*, 112 B.R. 386 (D. Colo. 1990). The term "fiduciary capacity," as defined by federal law and for purposes of §523(a)(4), applies only to technical trusts, express trusts, or

15

statutorily imposed trusts and not to fiduciary relationship which arise from equitable trusts, implied trusts, constructive rusts, or an agency relationship. . . .

\* \* \*

Defalcation under §523(a)(4) has been defined as "the failure of one who has received monies in trust to pay it over as he ought." *Travelers Express Co. v. Niven (In re Niven)*, 32 B.R. 354, 355 (Bankr. W.D. Okla. 1983).

\* \* \*

The trust is created when produce is "received by a commission merchant, dealer, or broker" and exists "until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents." . . .

\* \* \*

The legislative history of PACA expressly acknowledges that the PACA trust was modeled after the trust provisions of the Packers and Stockyards Act ("PSA"), 7 U.S.C. § 196 (1980). *Blair Meriam*, 95 B.R. at 776; *In Re W. L. Bradley Co.*, 75 B.R. 505, 509 (Bankr. E.D. Penn. 1987). The legislative history of PACA also directs courts to examine case law under PSA for guidance in construing PACA. *Id.* Courts have found that the trust created by PSA satisfies the fiduciary capacity requirement as defined by §523(a)(4). *National Bonding & Accident Ins. Co. v. Petersen (In re Petersen),* 51 B.R. 486, 488 (Bankr. D. Kan. 1985), *Baugh v Matheson (In re Matheson)*, 10 B.R. 652, 656 (Bankr. S.D. Ala. 1981).

It is this court's opinion that the trust created by PACA §499e(c)(2) satisfies the fiduciary capacity requirement as defined by §523(a)(4) and defendant's failure to pay plaintiff the proceeds from the sale of produce is a defalcation. Defendant's debt to plaintiff is the amount of $313,870.01 should be excepted from defendant's discharge by §523(a)(4).

*Tom Lange*, 123 B.R. at 414-415. (Various citations omitted).

Pursuant to the provisions of the PACA and its accompanying regulations, the PACA trust applied to all of Defendant Produce Buyers produce inventory, produce-related inventory, and proceeds thereof, "notwithstanding that another supplier may have been the source of the inventory." *Gullo Produce Co., Inc. v. A.C. Jordan Produce Co, Inc.,* 175 F. Supp. 64, 68 (W.D. Penn. 1990) citing *In Re Fresh Approach, Inc.,* 51 B.R. 412 (N.D. Texas 1985). The failure of Defendant Cipriano to pay RAM Produce was certainly a defalcation within the meaning of

16

§523(a)(4).  Therefore, the debts owed to RAM Produce by Defendant Cipriano may be properly determined to be nondischargeable pursuant to § 523(a)(4).

## STANDARD OF REVIEW AND RELIEF REQUESTED

A motion to dismiss under the F.R.C.P. 12(b)(6) should be granted only if the non-movant cannot prove any set of facts that would entitle him or her to relief.  *Labram v. Havel,* 43 F.3d 918, 920 (4th Cir. 1995).    In deciding whether to grant a F.R.C.P. 12(b)(6) motion to dismiss a  court must "accept the well-pled allegations of the [counterclaims] as true[ ] and ... construe the facts and reasonable inferences derived therefrom in the light most favorable" to the non-movant.  *Ibarra v. United States,* 120 F.3d 472, 474 (4th Cir. 1997).

Under F.R.C.P. 12(b)(6), a court may not consider extrinsic evidence in deciding motions to dismiss. *Grand Opera Co. v. Twentieth Century Fox Film Corp.*, 235 F.2d 303, 307 (7th Cir. 1956).   In this proceeding, Defendant Ciprano filed a motion relying on F.R.C.P. 12(b)(6). However, Defendant Cipriano attached to the motion several exhibits to support the Motion to Dismiss, including invoices and additional correspondence between the parties.

F.R.C.P. 12(d) expressly provides, as follows:

(d) Result of Presenting Matters Outside the Pleadings.  If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

"When extrinsic evidence outside the pleadings is submitted with a motion to dismiss under Rule 12(b)(6), the court generally must either convert the motion into one for summary judgment under F.R.C.P. 56, or exclude the documents attached to the motion to dismiss and continue under Rule 12(b)(6)." *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998).  (See also, *Schilling v. Swick*, 868 F. Supp. 904, 905 (W.D. Mich. 1994), stating, "motions to dismiss

under F.R.C.P. 12(b)(6) are to be treated as motions for summary judgment under F.R.C.P. 56 if the Court considers matters outside of the pleadings. F.R.C.P. 12(b).").

With regard to the "Motion to Dismiss" pending before this Court, RAM Produce respectfully requests that the Court treat the motion as one for summary judgment under F.R.C.P. 56 and give RAM Produce a reasonable opportunity to present the materials that it has attached as exhibits in response to Defendant Cipriano's motion. See for e.g. *Bennett v. James*, 737 F Supp. 2d 219, 223 (S.D. New York 2010). RAM Produce believes that consideration of the extrinsic evidence submitted by both parties will lead to a more informed decision on the motion filed by Defendant Cipriano.

Section 523(a)(4) of the Bankruptcy Code provides that a Chapter 7 discharge does not discharge debts that are the result of "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). The trust imposed by the PACA satisfies the fiduciary capacity prong of § 523(a)(4). Defendant Cipriano's misuse of PACA trust assets may clearly be considered a defalcation within the meaning of § 523(a)(4). Thus, the debts owed to RAM Produce may be found to be nondischargeable in Defendant Cipriano's bankruptcy.

For all of the foregoing reasons and the reasons noted in RAM Produce's response to the Motion to Dismiss, RAM Produce respectfully requests that this Honorable Court deny the Motion to Dismiss and provide RAM Produce the relief specified in the response to the Motion to Dismiss.

Respectfully Submitted,

WILLIAMS ACOSTA, PLLC

By:   /s/Victor J. Torres
     Victor J. Torres (P43240)
     Attorneys for RAM Produce Distributors, L.L.C.
     535 Griswold Street, Suite 1000
Date: October 22, 2014   Detroit, Michigan 48226-3692